FRED HOPPERMAN *vs.* FORE RIVER SHIP BUILDING COMPANY.

Norfolk. November 20, 21, 1913. — February 27, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence*, Employer's liability, In maintenance of electric light. *Electricity.*

In an action, against a corporation engaged in the construction of a battleship, by a machinist's helper in its employ, for personal injuries sustained by reason of the sudden extinguishment of the electric light in the fire-room of the ship, where the plaintiff had been working and was in the act of stepping from a

platform to a staging, so that in the darkness he missed his footing and was injured, it could have been found upon the evidence that the fire-room was lighted only by one large enclosed arc light, that during the week before the accident this light at different times flickered for a few seconds, "going out and coming in again," and that at the time of the accident it was out for about fifteen minutes while the lights in the engine room and other parts of the ship remained unextinguished. An expert testified that the flickering of the arc light and later its going out and remaining so indicated either a defective insulation of the wires, which probably had existed at least for five or six days before the accident and could have been revealed by an inspection of the wires, or else a defect in the lamp itself which probably had existed for a month. *Held*, that there was evidence warranting a finding that the light went out owing to a defect in the apparatus which the defendant might have discovered and remedied by the exercise of reasonable care.

TORT, against a corporation engaged in the construction of the battleship North Dakota, by a machinist's helper in its employ, for personal injuries sustained on March 18, 1909, by falling from a platform or staging in consequence of the sudden going out of the electric light in the fire-room, in which the plaintiff was working, when he was stepping from the platform to another staging. Writ dated March 17, 1910.

In the Superior Court the case first was tried before *Ratigan*, J., who ordered a verdict for the defendant, and exceptions alleged by the plaintiff were sustained in a decision reported in 214 Mass. 33.

There was a new trial before *Quinn*, J. At the close of the evidence, which is described in the opinion, the plaintiff waived the counts of his declaration under the employers' liability act and relied only on his counts at common law. The defendant asked the judge to make the following rulings:

"1. Upon all the evidence in the case the plaintiff cannot recover.

"2. Unless you are satisfied that the accident was caused by the wearing of the covering of the wires, as the plaintiff contends, your verdict must be for the defendant."

The judge refused to make either of these rulings and submitted the case to the jury, charging them in part as follows:

"It is the theory of the plaintiff that there was a defective condition of the insulation of the wiring indicated by the action of the arc light on certain occasions during the week previous to the accident, which caused what is technically known as a short circuit,

and which extinguished the light, and that the wearing of the insulating covering was caused by it coming in contact with the iron beams near the wiring or with the wiring itself, and that further the plaintiff claims there was a defective condition in the mechanism of the lamp itself which had existed a sufficiently great length of time to have been discovered by the defendant and to have been remedied by him before the injury.

"Assuming on the testimony you find there was a defect in the apparatus causing the light to go out, and that the defect is explainable on other grounds than that of the negligence of the defendant itself, the plaintiff must show affirmatively, or, in other words, the plaintiff must absolutely affirm the operation of such causes and show that the causes to which it attributes, the plaintiff attributes the accident by a fair preponderance of the evidence, is the cause to which the accident is due. Then the burden is clear in that respect. Although it may appear to you that there were other causes which might have caused this accident, the plaintiff is obligated to show you by a fair preponderance that the causes which he claims caused the accident were the causes that operated and did cause it at the time."

The jury returned a verdict for the plaintiff in the sum of $4,620; and the defendant alleged exceptions.

*J. Lowell,* (*L. Hill* with him,) for the defendant.

*L. S. Thierry,* (*J. H. Appleton* with him,) for the plaintiff.

DE COURCY, J. The plaintiff was employed by the defendant as a machinist's helper in the construction of the battleship North Dakota. Just before the accident he had been at work in the fire-room, standing on a platform that was about eighteen feet above the floor of the room. He testified that, after his job was completed, he started to step from the platform to a staging near by, in order to return to the deck above, when the light in the fire-room went out, leaving him in total darkness. He missed his footing, and fell to the floor, sustaining the injuries for which he sues.

The electricity for the lights was generated on the defendant's premises, at a distance from the dock where the ship was lying, and was conducted from the power house by a main circuit, and thence by three sub-circuits to the various parts of the ship. There were minor sub-circuits or mains, and the incandescent

and arc lights were not on the same circuit.  The wires were covered with a tough insulating fibre composed of hemp and rubber.  Although the evidence was conflicting, it could be found that on the day of the accident, March 18, 1909, the fire-room, in which the plaintiff was working, was lighted only by one large enclosed arc light; that during the week preceding the accident at different times this light was seen to flicker for a few seconds, "going out and coming in again," and that at the time of the accident it was out for about fifteen minutes, — during which time the lights in the engine room and other parts of the ship remained burning.

The going out of the arc light might be due to one of various causes, some of which would not be attributable to negligence on the part of the defendant.  An expert called by the defendant testified that, if the arc light remained out for ten minutes, this would be caused either by the wire to the light being broken, the opening of switches, the blowing out of a fuse or by something defective in the lamp itself.  On the evidence, including the expert testimony, the jury would be warranted in eliminating some of the possible causes, such as the cutting of the wires, the opening of a switch immediately before the accident and an overload at the power house, — which last would have put out all the lights on the ship.  The plaintiff's electrical expert, when questioned by the court, testified that he could not attribute the flickering in the week preceding as described to anything but a defective condition of the wiring, or a defective condition of the lamp itself.  He was of opinion that the flickering of the light, and later its going out, was due to the gradual wearing of the insulation of the wires against the beams; and that, before the wires became worn enough " to really put the light out," an occasional contact with the beam would cause the flickering described.   He testified that if the lamp flickered as described, and it was certain that there were no cross circuits, the trouble would be in the lamp itself.  He further said that the defective insulation, which in his opinion caused the light to go out, probably existed at least since the flickering of the lamp five or six days before the accident, and would have been revealed by an inspection of the wires, which were in plain sight, or by a test with instruments.  If the trouble were in the lamp,

and there was no short circuit, he said it would have existed probably a month. There was no evidence as to when this lamp and wire were installed, or as to any inspection of them.

In view of the foregoing, we are of opinion that there was evidence which, if believed, warranted the jury in finding that the light went out owing to a defect in the apparatus, which the defendant might have discovered and remedied by the exercise of reasonable care. And the plaintiff was not confined by his pleadings or by the evidence to a defective condition of the wires, but he could recover if the jury found that the defect was in the lamp. The question of the plaintiff's due care clearly was for the jury. The rulings requested by the defendant were rightly refused. *Saures* v. *Stevens Manuf. Co.* 196 Mass. 543. *Mehan* v. *Lowell Electric Light Corp.* 192 Mass. 53. *James* v. *Boston Elevated Railway,* 204 Mass. 158. *Hopperman* v. *Fore River Ship Building Co.* 214 Mass. 33.

The objection raised to the hypothetical questions put to the plaintiff's electrical expert, that they were not the subject of expert testimony and were based on inadequate hypotheses, is untenable. The facts assumed in the questions might have been found by the jury. The questions were not inadequate in failing to assume the presence of incandescent lights, as there was evidence to sustain the plaintiff's contention that there were no incandescent lights in the fire-room on the day of the accident. *Greene* v. *Boston Elevated Railway,* 207 Mass. 467. The other exceptions to evidence are not argued, and we treat them as waived.

*Exceptions overruled.*