CHARLES DE WULF, v. S. D. DIX, HENRY HINES, and WILLIAM D. CRENSHAW, Appellants.

| 110 | 553 |
| 114 | 625 |
| --- | --- |
| 110 | 553 |
| 117 | 398 |
| 117 | 620 |
| 110 | 553 |
| 121 | 466 |
| 110 | 553 |
| 134 | 278 |
| 110 | 553 |
| 142 | 663 |

**Conspiracy:** CIVIL ACTION FOR. In an action for damages for conspiracy and fraud in inducing plaintiff to exchange his land for a stock of goods, refusal to instruct that conspiracy could not be made the subject of a civil action unless something was done which, without the conspiracy, would give a right of action, and that, if the jury found that the price paid by defendant to plaintiff was practically equal to the value of the property received from him, and no fraud was practiced, the verdict should be for defendant, was error, where there was evidence on which the instruction could be predicated.

**Evidence:** DAMAGES FOR FRAUD: *Plaintiff's poverty inadmissible.* In an action for damages for fraud, in inducing plaintiff to exchange his lands for a stock of goods, it was error to admit evidence adduced merely to show plaintiff's poverty.

**RATIFICATION:** *Instructions.* In an action for damages for fraud in inducing plaintiff to exchange his land for a stock of goods, where there was evidence that he had given a chattel mortgage on the goods to pay an incumbrance on the land, a charge that the jury should not consider the mortgage "for any purpose, whatever" was erroneous, since the defendant was entitled to have it considered as tending to show ratification.

**MAP NOT IN EVIDENCE GIVEN TO JURY.** Where the value of land was in issue it was error to permit a map of the United States, not introduced in evidence, to be delivered to and considered by the jury while deliberating on their verdict.

.**Appeal:** AGREEMENT AS TO STATING ISSUES TO JURY. Where counsel agree to the reading of the pleadings by the court in its instruc-tions, in lieu of a concise and comprehensive statement of the issues, they cannot complain of the error on appeal.

MISCONDUCT OF COUNSEL: *Affidavits.* On appeal, misconduct of counsel in his argument to the jury, in the presence of the court, cannot be shown by affidavits used on the motion for new trial which are incorporated into the bill of exceptions.

.*Appeal from Cedar District Court.*—HON. WILLIAM G. THOMPSON, Judge.

TUESDAY, FEBRUARY 6, 1900.

ACTION at law to recover damages for conspiracy, and for false and fraudulent representations made as the induce-ment to an exchange of property between plaintiff and defend-ant Dix. The petition alleges that defendant Hines, although authorized by plaintiff to trade his (plaintiff's) land for a stock of goods at Mechanicsville, Iowa, conspired and confed-erated with the other defendants to cheat and defraud plain-tiff out of his property; that defendant Crenshaw was an agent of his co-defendant Dix, and a party to the conspiracy; and that one Free, a clerk of defendant Dix, was also a party to the conspiracy. Defendant Dix admitted that Crenshaw was his agent, but denied the conspiracy and fraud charged in the petition. Crenshaw denied the alleged fraud and con-spiracy, and denied any relations with defendant Hines. Free admitted he was a clerk, but denied all fraud and con-spiracy, and denied any relations with Hines. Hines admitted that he was authorized to exchange plaintiff's land, but denied all charges of fraud and conspiracy. On these issues the case was tried to a jury, resulting in a verdict and judgment against all defendants except Free, and these defendants appeal.—*Reversed.*

*W. H. Smith, Wright & Wright,* and *Jamison & Smyth* for appellants.

*Chas. W. Kepler* and *Henry McClosky* for appellee.

DEEMER, J.—May 26, 1898, plaintiff and defendant Hines entered into a written agreement, by the terms of which Hines was to exchange plaintiff's farm, consisting of one hundred and sixty acres of land in Boone county, Neb., for a stock of goods located at Mechanicsville, Iowa, belonging to defendant Dix,—Hines to have all the goods that he obtained over two thousand dollars in value as compensation for his services. On the twenty-eighth day of May, plaintiff, and defendant Crenshaw, acting as agent for Dix, entered into a written contract for an exchange of properties, by the terms of which plaintiff agreed to give his one hundred and sixty acres, free of incumbrance, at a valuation of twenty dollars per acre, in exchange for the stock of goods of defendant Dix; and it was provided that, if said stock invoiced for more than three thousand two hundred dollars, Dix was to retain the excess. The cost mark on the goods was designated as the price at which they should be invoiced. There was an incumbrance of four hundred dollars on the land, and it was agreed that plaintiff should either pay the same or deposit an amount sufficient to meet it in a bank at Mechanicsville. Pursuant to this agreement the goods were invoiced, and all in excess of the three thousand two hundred dollars were removed by defendant Dix from Mechanicsville to Cedar Rapids, at which latter place Dix also had a store. Plaintiff took possession of the stock, mortgaged it for four hundred and fifty dollars, and deposited the amount received with the bank, as agreed. Hines took out of the stock goods invoiced to the amount of one thousand dollars, claiming that he was entitled thereto as compensation for his services in effectuating the trade under his contract of May 26th. Through a representative, plaintiff had charge of the goods for several weeks, at the expiration of which time he notified Dix that he was dissatisfied with his trade, claimed that he had been swindled, demanded of defendant Dix a deed for his Nebraska land, and stopped payment of the four hundred and fifty dollars

deposited with the bank. Dix declined to rescind, and, as plaintiff failed to pay the four hundred and fifty dollar debt that he had secured by mortgage on the stock of goods, the holder thereof proceeded to sell the stock undisposed of by plaintiff while he held possession under the chattel mortgage. The remainder of the stock did not sell for sufficient to extinguish the mortgage debt. This action was then commenced by plaintiff, who claims that defendants conspired and confederated together to cheat and defraud him out of his land, and that by fraud and false representations as to the character and value of the stock and as to the character and effect of the papers produced for him to sign they accomplished their purpose; that, after the contract was made, defendants Crenshaw, Dix, and Free, without consent of plaintiff, fraudulently carried away from the Mechanicsville stock something like two thousand dollars worth of new and salable goods, and the defendant Hines took and carried away about one thousand dollars worth; that the mortgage to the bank for the four hundred and fifty dollars was procured by false and fraudulent representations of the defendant Hines. Rescission of the contract is also pleaded and judgment for three thousand dollars demanded. The answers were, in effect, general denials. Plaintiff is a Belgian, is unable to read or write the English language, and had very little familiarity with mercantile business. He testified, in effect, that the only contract he ever made with Crenshaw or Hines was to the effect that he was to have one thousand four hundred dollars in cash, over and above the mortgage, for his land. The contract between plaintiff and Hines and the one between plaintiff and Dix are both in writing and bear the plaintiff's signature. The chattel mortgage on the stock of goods also appears to have been signed by plaintiff. He says, however, that he did not know what they contained, and that he signed them on the strength of representations made by Hines as to their contents. It also appears that about three thousand dollars worth of the goods

were taken out of the store by defendant Dix the morning
before the invoice was taken, and that about one thousand
dollars worth were taken out by Hines. The remainder of
the goods were not worth anything like the sum for which
they were invoiced. Some of the witnesses say they were
not worth more than five hundred dollars, and some say not
more than seventy-five cents on the dollar of the invoice
price. Plaintiff was asked this question on his exam-
ination in chief: "Now, have you any property?"
This was objected to, but the objection was overruled,
and the ruling was followed by this further question: "Either
real or personal, except the property you claim to have in this
land in Nebraska?" To this the defendant also objected,
but the objection was overruled, and witness answered,
"That's all." This evidence was wholly irrelevant to any
issue in the case, and was evidently adduced for the purpose
of showing plaintiff's poverty. It should not have been
received. *Cowan v. Musgrave,* 73 Iowa, 384; *Stevens v.
Ellsworth,* 95 Iowa, 231; *Clark v. Same,* 104 Iowa, 442;
*Bailey v. Bailey,* 94 Iowa, 598.

II. Instead of stating the issues in a concise and com-
prehensive manner, the court used copies of the pleadings,
and read them in *haec verba* to the jury. Such a proceeding
has been so frequently condemned that we need not
do more than cite the last case on the subject, where
all the previous decisions are collected. See *Swanson
v. Allen,* 108 Iowa, 419. However, counsel agreed in this
case to the course pursued by the trial court, and they can-
not now be heard to complain.

III. After the jury had retired to deliberate upon
their verdict, they asked the bailiff in charge for an atlas.
Pursuant to this request, he procured a map showing the
different states of the Union, and delivered it to some
of the jurors, who took it into the jury room, where
it remained until the verdict was returned. The map
was not introduced in evidence, and the purpose of the request

can only be surmised. If it were to discover the location of
plaintiff's land in order that the jury might fix its value, its
presence in the jury room might constitute prejudicial error.
Indeed, error is to be presumed from its delivery to and
consideration by the jury. It may be that, from the descrip-
tion given of the land by the various witnesses, some of the
jurors may have known of its exact location, and we may
assume that perhaps they did know; but they had no right
to use the map to verify their conclusions. If this were the
only error, we might say that it was without prejudice, and
refuse to reverse on this ground alone. But, as the case must
be reversed for other reasons, we simply say that it was error
to permit the map to go to the jury at the time and in the
manner it did. See *McLeod v. Railway Co.*, 71 Iowa, 138;
*Kruidenier v. Shields*, 70 Iowa, 428; *Griffin v. Harriman*,
74 Iowa, 436; *Oskaloosa College v. Western Union Fuel Co.*,
90 Iowa, 380.

IV. One of the grounds of the motion for a new trial
was misconduct of plaintiff's counsel in his argument to the
jury. The alleged misconduct is attempted to be shown by
affidavit. It is well understood that this is not proper
practice. *State v. Hall*, 79 Iowa, 674; *Hall v. Carter*,
74 Iowa, 364; *State v. Clemons*, 78 Iowa, 123. The
affidavits were incorporated in the bill of exceptions, but
this is not sufficient where the alleged misconduct took place
in the presence of the court, as we must presume it did in this
case. *State v. Burton*, 103 Iowa, 28; *Faulk v. Iowa County*,
103 Iowa, 442; *State v. Lagrange*, 99 Iowa, 10. The bill
itself, as signed by the judge, does not show any misconduct.
Appellee's counsel filed an affidavit reciting the facts as he
understood them pertaining to the alleged misconduct. If it
be true that he is bound thereby notwithstanding the defect
in the bill of exceptions,—a point we do not at this time
decide,—there is no such showing as will justify us in inter-
fering with the discretion of the trial judge in overruling
the motion.

V. Defendants asked an instruction to the effect that conspiracy could not be made the subject of a civil action unless something was done which, without the conspiracy, would give a right of action, and that, if the jury found from the evidence, that the price paid by defendants to plaintiff was practically equal to the value of the property received from the plaintiff by defendants, and that no fraud was used, then the verdict should be for defendants. There was evidence in support of the proposition advanced by this instruction, and it should have been given. *Work v. McCoy,* 87 Iowa, 217; *Beechley v. Mulville,* 102 Iowa, 602. In the seventh instruction given by the court the jury were told, in effect, that they should not consider the four hundred and fifty dollar mortgage executed by plaintiff to one Miller for any purpose whatever. This is manifestly erroneous. In so far as plaintiff was entitled to have it considered, the error was without prejudice. But defendant was entitled to have it considered for several reasons: *First,* it might tend to show a ratification of the alleged fraud and conspiracy; *second,* if executed by plaintiff with full knowledge of its contents, and he had credit on a valid obligation given by him on account of a sale of the goods under foreclosure, he ought not to have the benefit thereof without charge. The distinction between fraud and conspiracy was not stated in the charge as given. That there is a marked distinction is so well known that the bare statement of the proposition is all that is necessary. The court instructed in a general way on the question of fraud, and also stated that, if defendants acted together for the purpose of cheating and defrauding plaintiff, they would be liable for the resulting damage. If plaintiff claimed anything on account of the fraud of the defendants, disconnected from the idea of conspiracy, a different rule would obtain than if he relied upon a charge of conspiracy to cheat and defraud, resulting in wrong and injury. As an attempt was made to differentiate fraud from con-

spiracy, it should have been done more clearly than it was. Again, if the charge was fraud and false representations, divorced from conspiracy, not only would the measure of damages be different, but the liability of the parties might not be the same as if conspiracy were the gist of the action. If plaintiff's agent is the one who is guilty of fraud, and defendants acted in good faith, and did not confederate with him to do the wrong, the agent alone is liable. Whether or not both principal and agent are liable for a fraud committed by an agent while acting within the scope of his authority, and without preconcerted action, we need not decide, as the question does not properly arise. But see *Berghoff v. McDonald,* 87 Ind. 549. On a retrial the court should instruct more carefully on the issues tendered by the pleadings.

VI.    Lastly, it is insisted that the verdict is not sustained by the evidence. In view of a retrial, we deem it best not to express an opinion on this point. For the errors pointed out, the judgment of the district court is REVERSED.

GRANGER, C. J., not sitting.